1    ANNETTE L. HURST (SBN 148738)
     ahurst@orrick.com
2    ORRICK, HERRINGTON & SUTCLIFFE LLP
     The Orrick Building
3    405 Howard Street
     San Francisco, CA  94105-2669
4    Telephone:     +1 415 773 5700
     Facsimile:     +1 415 773 5759
5

6    DENISE M. MINGRONE (SBN 135224)
     dmingrone@orrick.com
     ORRICK, HERRINGTON & SUTCLIFFE LLP
7    1000 Marsh Road
     Menlo Park, CA  94025-1015
8    Telephone:     +1 650 614 7400
     Facsimile:     +1 650 614 7401
9

10    FABIO E. MARINO (CA Bar No. 183825)
     Fabio.Marino@wbd-us.com
     WOMBLE BOND DICKINSON (US) LLP
11    1279 Oakmead Parkway
     Sunnyvale, CA 94085
12    T: 408-720-3436

13    Attorneys for Plaintiff
     NUTANIX, INC.
14

15                UNITED STATES DISTRICT COURT

16             NORTHERN DISTRICT OF CALIFORNIA

17

18

|  |  |
|---|---|
| NUTANIX, INC., | Case No.  5:24-cv-1729 |
|               Plaintiff, | **COMPLAINT FOR (1) WILLFUL COPYRIGHT INFRINGEMENT, (2) WILLFUL PATENT INFRINGEMENT, (3) TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS; (4) DECLARATORY AND INJUNCTIVE RELIEF** |
|        v. | |
| TESSELL, INC., | |
|             Defendant. | **DEMAND FOR JURY TRIAL** |

For its Complaint, Nutanix, Inc. ("Nutanix") hereby alleges against Tessell, Inc. ("Tessell") the following, all allegations made on personal knowledge except where indicated as to information and belief:

**INTRODUCTION**

1.     Plaintiff Nutanix is an industry leader in providing flexible cloud platform infrastructure for a wide variety of business applications.  One of the products created and launched by Nutanix was Nutanix Era, a database software management product.  Defendant Tessell is a competitor of Nutanix, offering a competing cloud-based database software management product.  Tessell's competition, however, results from an unfair and unlawful scheme by it and its founders to steal from Nutanix.  Specifically, Tessell's three founders, Bala Kuchibhotla ("Kuchibhotla"), Kamaldeep Khanuja ("Khanuja"), and Bakul Banthia ("Banthia") (collectively, "KKB"), substantially developed its competing technology while they were still employed by Nutanix, where Kuchibhotla was General Manager and Senior VP of the Era business and Khanuja and Banthia were senior engineers.  KKB used Nutanix facilities, equipment, services, and even the Nutanix Era source code when developing the Tessell product.  KKB planned, developed, obtained initial financing for, and demonstrated prototypes of the competing product—all using Nutanix computers and while they were employed by Nutanix.  One of the Tessell prototypes they demonstrated *actually ran on Nutanix servers*.  When planning their departures, KKB took all or a substantial portion of the Era source code, saved it to private accounts and devices, and Tessell later incorporated Era source code into its product.  KKB then wiped their laptops to cover their tracks, an effort that was initially successful.  When Tessell launched its product in late 2022, however, the speed with which it came to market with features strikingly similar to Era caused Nutanix to commence a full-fledged forensic investigation.  As a result, Nutanix uncovered the theft of proprietary code and technology described herein.

**NATURE OF ACTION**

2.     Nutanix Era is a software solution for managing databases in servers located in enterprise data centers and in hybrid multicloud environments.  Era simplifies the processes for managing databases, including creating, populating, backing up, duplicating, and administering

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

COMPLAINT AND DEMAND
FOR JURY TRIAL

databases.   Without Era, an enterprise customer—who typically may operate hundreds of databases—would need to invest significant time, money, and engineering talent to achieve the same results.   Today, Nutanix Era supports widely known and used databases such as Oracle, Microsoft SQL Server, MongoDB, MySQL, and PostgreSQL.   Nutanix's fully-featured version of Era was developed and released by a talented team of engineers over a multi-year period.[1]

3.      Tessell is a cloud-based database management software provider, offering a Database Management Platform product and associated services that competes with Nutanix Era (the "Accused Product").   Like Era, the Tessell database management offering supports Oracle, Microsoft SQL Server, MongoDB, MySQL, and PostgreSQL databases.   Remarkably, Tessell released its fully-featured Accused Product only 18 months after the company was founded.   Tessell was able to release a robust commercial product in such a relatively short period of time because it was founded by a group of Nutanix engineers who were instrumental in developing the Era product, and who had access to all of the key technology and source code embedded in Era.   These three Nutanix engineers, KKB, used Nutanix resources and intellectual property to develop the Accused Product as described herein.

4.      Unbeknownst to Nutanix, KKB secretly planned their competing business while fully employed by Nutanix.   They used Nutanix proprietary technology and intellectual property to which they were privy to design the Accused Product, develop a prototype for demonstration to potential customers and/or investors, create a business plan, and obtain seed financing.   When leaving Nutanix, at least one of them made and retained a copy of all or a substantial portion of the Era source code.   They tried to bury their tracks by destroying the contents of their Nutanix laptops.

5.      Tessell was formed while KKB were in possession of Nutanix's Era code and technology.   Khanuja took Era source code with him, making it available to both Kuchibhotla and Banthia on shared private devices.   Banthia continued to work at Nutanix for two months after Tessell was formed.   KKB provided to Tessell all of the work they had done while at Nutanix and

---

[1] Nutanix Era was later renamed Nutanix Database Service ("NDB") in 2022.  This Complaint will refer to the product as Nutanix Era both as a matter of readability and because Era was the product name while Tessell's founders were employed by Nutanix and began the egregious course of conduct described herein.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 3 -

COMPLAINT AND DEMAND
FOR JURY TRIAL

that they in fact owed to Nutanix, rather than Tessell.  Tessell obtained Nutanix's preexisting and new intellectual property in order to develop the Accused Product, granting in exchange the founders' shares in the company to KKB.  As soon as it came into existence, Tessell participated in and benefited from KKB's unlawful acts, committing a multitude of infringements and torts.  Tessell *would not exist* but for its theft of Nutanix code and intellectual property.

6.      First, Tessell is infringing copyrights in the Era computer program in violation of the Copyright Act, Title 17, United States Code.  Nutanix has registered Era versions 2.1.1.2 (Registration No. TXu 2-410-887) and 2.5.2.2 (Registration No. TXu 2-410-892) and hereby asserts all works encompassed thereby (collectively, the "Asserted Works").

7.      Second, Tessell is infringing Nutanix's patents.  KKB—who were inventors of key Era features and methods—incorporated those patented features and methods into the Accused Product.  KKB were among the named inventors on the patents in suit.  By making, using, selling, offering to sell, and importing the Accused Product, Tessell infringes Nutanix's U.S. Patent Nos. 10,817,157 ("the '157 Patent"), 11,010,336 ("the '336 Patent"), 11,640,340 ("the '340 Patent"), and 11,860,818 ("the '818 Patent") (collectively, the "Asserted Patents") under 35 U.S.C. § 1 *et seq*.  As described further below, the Accused Product infringes one or more claims of each of the Asserted Patents.

8.      Third, each of KKB were obligated by express written agreements to assign to Nutanix all intellectual property rights in work product created while employed by Nutanix.  For a period of nearly a year while still employed by Nutanix, KKB created work product that they did not disclose and assign to Nutanix, but instead traded to Tessell in exchange for their shares in the company.  KKB concealed this work product, misappropriated it as consideration for their founders' shares in Tessell, and incorporated it in the Accused Product (the "Stolen IP").

9.      By departing Nutanix without disclosing the Stolen IP or assigning it to Nutanix, KKB breached their agreements—and Nutanix fully intends to separately pursue its tort and contract claims against them in arbitration as required by those agreements.  Nutanix cannot be made whole, however, without also remedying Tessell's part in this ongoing theft.  Tessell's acceptance of, claim of ownership and dominion over, and exploitation of the Stolen IP is an

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 4 -

COMPLAINT AND DEMAND
FOR JURY TRIAL

interference with Nutanix's exclusive right to title in the Stolen IP.  Tessell knows well that its founders KKB were contractually obligated to disclose and assign the Stolen IP to Nutanix, and by exercising dominion over that IP, Tessell is interfering with and frustrating Nutanix's contractual rights to that work product.

10.     In sum, Tessell utilized KKB's knowledge of the Era product and copies of Nutanix source code, inventions, and computing resources and applications to launch its own competing database infrastructure product.  Tessell obtained and used KKB's illegally-created work product to develop its business plan and technology at Nutanix's expense.  Tessell's competing product not only utilizes Nutanix Era source code and Stolen IP, but also many of the patented inventions developed by KKB and other former Nutanix employees.  KKB, and therefore Tessell, were well aware that Nutanix owned copyrights in its source code and also were aware of its patent program.

11.     Accordingly, Tessell's copyright and patent infringement is knowing and willful. Tessell's ongoing interference with Nutanix's contractual rights has been carried out by fraud and concealment.  Nutanix is entitled, subject to proof, to its actual damages, restitution, disgorgement of profits, declaratory and injunctive relief, enhanced damages, punitive damages, attorneys' fees and costs, an accounting, and any such other relief as the Court may deem proper.

## PARTIES

12.     Nutanix is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 1740 Technology Drive, Suite 150, San Jose, California 95110.

13.     On information and belief, Tessell is a corporation organized under the laws of the State of Delaware and with a principal place of business at 2603 Camino Ramon, Suite 200, San Ramon, CA 94583.

## JURISDICTION AND VENUE

14.     This Court has federal question subject matter jurisdiction pursuant to 35 U.S.C. Sec. 1, *et seq.* and 28 U.S.C. § 1331 because the federal courts are vested with exclusive jurisdiction in actions arising under the patent and copyrights laws of the United States under 28 U.S.C. § 1338(a).

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 5 -

COMPLAINT AND DEMAND
FOR JURY TRIAL

15.     This Court has personal jurisdiction over Tessell because its principal place of business lies within the State of California, and because it has conducted and does conduct business within the State of California and within the Northern District of California.

16.     Venue in this district is appropriate under 28 U.S.C. §§ 1391 and 1400 because Tessell resides in the State of California and the Northern District of California, and because a substantial part of the events giving rise to the dispute occurred within this District.

**FACTUAL ALLEGATIONS**

**A.     The Nutanix Era Database Software Management Product.**

17.     From humble beginnings as a small Silicon Valley start-up in 2009, Nutanix has emerged as an industry leader in enterprise cloud computing.  Nutanix has developed a sophisticated suite of software products—called the Nutanix Cloud Platform or "NCP"—that enables customers to manage their IT applications, data, and resources, whether they are on-premises, in a service provider data center, or are in a public cloud such as Amazon Web Services ("AWS") or Microsoft Azure.  NCP is built on a sophisticated, hyperconverged architecture that allows customers to virtualize and easily manage their computing, storage, and networking resources.  Using NCP, customers can scale up or down their IT infrastructure on demand to meet their enterprise computing needs.

18.     A key component within the NCP is Era, a database software management product. Era enables customers to easily manage and automate maintenance of their databases through a simple-to-use, yet powerful, management console.  With Era, customers can provision databases (creating and configuring new databases), create and restore database backups, patch existing databases, and manage database security and availability.  Era can provide these capabilities across a variety of computing and cloud platforms for use with the top open source and proprietary database engines (including Oracle, Microsoft SQL Server, MongoDB, MySQL, and PostgreSQL). Among the key features of Era is "Time Machine."  This feature allows customers to create snapshots of databases and transaction logs, enabling databases registered with Era to be cloned or recovered as of specific points in time.

19.     With its innovative features, Era has helped hundreds of customers, from start-ups

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 6 -

COMPLAINT AND DEMAND
FOR JURY TRIAL

to Fortune 100 companies, in industries as varied as financial services, education, transportation, and technology, to manage and grow their database capabilities.  Over the years, Era has led to, or increased, sales of other Nutanix products, including its premier Nutanix Cloud Infrastructure product.

20.     Nutanix started development of Era with a talented team of software engineers in 2017 and released the first version in November 2018, later improving it to the full functionality of Era 2.0 released in 2020.  Since its launch, Nutanix has continued to improve and develop Era, dedicating significant engineering resources to this important product every year.

21.     One such engineer who worked on Era from the beginning was Kuchibhotla, who served as the team lead and director.  Kuchibhotla joined Nutanix in February of 2017 as a Senior Director of Technology in the Engineering Department.  By 2019, he was promoted to Vice President and General Manager of the Nutanix Era product line business.  In 2020, he received another promotion to Senior Vice President in the Nutanix Engineering Department.  These promotions included not only financial incentives of salary increases and significant amounts of Nutanix stock, but also signified the trust and pride that Nutanix placed in Kuchibhotla as the lead executive for one of its premier products.

22.     Once Kuchibhotla joined Nutanix in 2017, two of his software engineer friends, namely Khanuja and Banthia, joined Kuchibhotla to work with Kuchibhotla on the Era product team.  Khanuja joined Nutanix in February 2017 as a Staff Engineer, while Banthia joined Nutanix in December of 2017 as a Senior Member of the Technical Staff.  Both reported to Kuchibhotla, and over time both received several promotions and salary increases—all based on Kuchibhotla's performance reviews and recommendations—during their four-year careers at Nutanix.  In 2020, Khanuja was promoted—with Kuchibhotla's sponsorship—to the position of Distinguished Engineer, a position of high esteem and trust at Nutanix.

23.     While they worked at Nutanix, KKB's daily job responsibilities included developing, testing, supporting, and promoting Era, and helping with demonstrations and sales of Era.  They had access to the repositories where Nutanix stored the source code for Era, and they often wrote, edited, and reviewed Era source code.  KKB included Nutanix copyright notices in the

COMPLAINT AND DEMAND
FOR JURY TRIAL

Era source code, indicating they understood Nutanix owned the copyright in Era.

24.     The source code for Era is an original work of authorship protected by U.S. copyright laws.  KKB's contributions to the Era source code were made in the scope of their employment for Nutanix while working in the United States.  Therefore, Nutanix is the author and owner of all copyrightable works of authorship constituting Era made by KKB.

25.     When KKB joined Nutanix, each signed a "Nutanix Confidential Information and Invention Assignment Agreement" (individually "Agreement" or collectively "Agreements"). These Agreements obligated KKB to refrain from engaging in a competing business while employed by Nutanix.  They also obligated each of KKB to report all inventions, works of authorship, ideas, and any other intellectual property made during the period of their employment at Nutanix, to assign all relevant rights to Nutanix, and to cooperate in all activities necessary to perfect those intellectual property rights.

26.     Consistent with their obligations to assign inventions to Nutanix, KKB each assisted Nutanix's counsel to draft and prosecute multiple Nutanix patent applications regarding their work. All three were active participants in the Nutanix patent program.  KKB each signed inventor declarations and assignments for the patent applications of those of the Asserted Patents on which they respectively are named as inventors.

**B.      Tessell's Launch.**

27.     Kuchibhotla and Khanuja abruptly departed Nutanix together on March 23, 2021. Less than 24 hours later, Kuchibhotla formed the Tessell entity and filed incorporation papers with the California Secretary of State.  Neither Kuchibhotla nor Khanuja disclosed his next employer to Nutanix at the time of their departures, nor did they make public such information.  Khanuja misled his closest colleagues, saying he had "multiple options," when, in fact, he intended only one destination, i.e., Tessell.  Kuchibhotla's LinkedIn account listed his employment as "stealth startup" well into 2023.

28.     On May 14, 2021, close to two months after Kuchibhotla and Khanuja departed, Banthia left Nutanix.  While Banthia similarly declined to disclose his new employment, later he publicly posted that he was a co-founder of Tessell as of March 2021.  Banthia thus remained a

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 8 -

COMPLAINT AND DEMAND
FOR JURY TRIAL

Nutanix employee for nearly two months while also acting as a founder of Tessell.  During the overlapping period, Banthia continued his work with the Nutanix team on the Era product.  Banthia had ongoing access to Era source code during the overlapping period while he was also covertly working as a founder of Tessell.

29.    In the following months, other Nutanix employees that worked on Era left to join Tessell, or a Tessell subsidiary, including Sujit Menon ("Menon"), Maneesh Rawat ("Rawat"), and Sagar Sontakke ("Sontakke"), all of whom are also named inventors on the Asserted Patents.  On information and belief, one or more of these engineers began work for Tessell prior to terminating their employment with the Nutanix subsidiary in India.

30.    Tessell emerged from stealth mode on or about October 2022 as a Nutanix competitor in the database management landscape.  The Accused Product thus reached the market surprisingly quickly considering that its features are strikingly similar to the fully-featured Nutanix Era product.

31.    Like Nutanix's Era, the Accused Product comprises a database software management platform that Tessell claims simplifies database management for enterprises.  The Accused Product supports many of the same database engines (e.g., Oracle, Microsoft SQL Server, MySQL, PostgreSQL, and MongoDB) as Nutanix Era.  Nutanix Era can be used to manage customer databases in Nutanix Cloud Clusters on the AWS and Microsoft Azure public clouds, which is where Tessell's product is used to manage customer databases.  Like Nutanix Era, Tessell also purports to have a management console that enables simple database provisioning and administration.  The Accused Product even includes a data management feature with the name "Availability Machine," which, among its features, creates snapshots of databases that can be restored as of specific points in time, similar to Nutanix Era's "Time Machine."  Tessell targets customers in the same market segments as Nutanix Era and, in particular, is targeting existing Nutanix customers.

**C.    Nutanix Investigation Reveals Tessell's Theft Of And Interference With Nutanix's Rights To Source Code And Inventions.**

32.    Given the surprising speed with which Tessell seemingly was able to bring its

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 9 -

COMPLAINT AND DEMAND
FOR JURY TRIAL

similar software product to market, and the presence of a number of former Nutanix employees at the company, Nutanix launched an internal investigation. Nutanix's investigation revealed that KKB secretly started work on what would become the Accused Product by mid-2020. This was not mere daydreaming about starting a new company: KKB actively planned and worked to compete against Nutanix while they had access to Nutanix's confidential information, including Era source code. While still employed at Nutanix, they secured seed financing, developed a business plan, and made substantial progress designing and developing the user interface and other aspects of what, upon information and belief, would become the Accused Product.

33.     Nutanix conducted a forensic analysis of how KKB used Nutanix's computers and IT resources while still employed by Nutanix. That review established that they agreed to start their own business by March 2020. Khanuja and Banthia then started writing code for their separate enterprise by no later than July 2020 while employed by Nutanix. In recovered messages, they discuss debugging user interface code and development of a demonstrative product website for their planned new company. On September 20, 2020, two months after they began coding the Tessell user interface, Kuchibhotla created an encrypted WhatsApp chat group named "DBPlatform" on his Nutanix laptop. Kuchibhotla invited only Khanuja and Banthia to join this new chat group. All three then used the DBPlatform chat group to plan and design Tessell's software product.

34.     The forensic analysis further revealed that through the remainder of 2020 and early 2021, the three future Tessell founders continued to meet regularly and execute on their plans to create Tessell's product while still employed by Nutanix. On information and belief, much—if not all—of these secretive Tessell-related activities were conducted on Nutanix-issued laptops, using Nutanix computing hardware and software. All work KKB performed throughout these many months was completed using Nutanix's business assets while they remained Nutanix employees, using the skill and time they had contractually agreed to devote to Nutanix. The Accused Product bears a striking resemblance to the vision and roadmap that Kuchibhotla had created and promoted for Era and Nutanix since his early days at Nutanix.

35.     KKB pitched a demo of the Accused Product to a third party, possibly a potential investor or potential customer, on or about January 20, 2021. KKB demoed what they were then

pitching as "RDS Redefined for Enterprises." This intellectual property was created during and within the scope of their employment with Nutanix and subject to the terms of the Agreements.

36.     One action item on KKB's January 2021 product roadmap for Tessell was to "Remove Era icon everywhere," i.e., delete all uses of the Era logo from their demo and other materials.

37.     Shortly before departing, Khanuja synced a large amount of Era source code to his personal iCloud account, then tried to cover his tracks. Nutanix's forensic review uncovered not only this unlawful theft of Era source code, but also the fact that Khanuja copied the source code to additional personal devices made available to at least the other Tessell founders.

38.     Accordingly, Nutanix believes that KKB, during their Nutanix employment, used Nutanix's Era source code and Nutanix's computing resources to design, build, and demonstrate what later became the Accused Product, and Tessell continued to infringe the Era source code after KKB's Nutanix employment by continuing to copy, distribute, and prepare derivative works of the Asserted Works.

39.     The nature of the Accused Product as a fully hosted "software as a service" makes it impossible to ascertain the full degree to which Tessell copied Nutanix source code in creating the Accused Product. Most of the source code that would demonstrate the full extent of Tessell's copyright infringement is not publicly accessible for Nutanix to inspect. Nor can Nutanix gain access to Tessell's object code in order to reverse engineer and analyze it. In effect, given the nature of the software product at issue, the source code of the Accused Product is a "black box."

40.     Nonetheless, despite this difficulty, Nutanix has been able to uncover that Tessell copied original, protected elements of Era source code in at least user interface code. Nutanix believes that this is just the tip of the iceberg. In light of the foregoing, Nutanix is informed and believes and thereupon states that discovery into the black box of Tessell's Accused Product source code will reveal not only additional copyright infringement, but will also afford Nutanix the ability to ascertain how much of Tessell's technology is actually owned by Nutanix because it was developed by Tessell founders while they were still employed by Nutanix.

41.     Tessell's interference with Nutanix's contractual rights commenced the moment it

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 11 -

COMPLAINT AND DEMAND
FOR JURY TRIAL

came into existence.  Tessell took all the secretive work KKB did in 2020 and 2021, while they were employees of Nutanix, and made it the foundation of the new company.  Tessell did so despite knowing—because its founders KKB were well aware—that the former Nutanix employees had the obligation to assign all of this work product to Nutanix, rather than to Tessell.

42.     Additionally, as described below, Tessell—no doubt in part as a result of procuring work product to which it was not entitled both during and after KKB's employment at Nutanix— infringes multiple patents owned by Nutanix.

**D.     Nutanix Invents The Asserted Patents.**

**1.     United States Patent No. 10,817,157**

43.     On October 27, 2020, United States Patent No. 10,817,157, entitled "User Interface for Database management Services," was duly and legally issued by the United States Patent and Trademark Office from U.S. Patent Application Serial No. 16/288,728, filed on December 20, 2018, attached as **Exhibit 1**.  Nutanix, Inc. is the owner, by valid assignment from inventors Kuchibhotla, Banthia, and Paul James Tangen, of the entire right, title, and interest in and to the '157 Patent, including the right to assert all causes of action arising under the patent and the right to any remedies for infringement of the patent.

**2.     United States Patent No. 11,010,336**

44.     On May 18, 2021, United States Patent No. 11,010,336 ("the '336 Patent"), entitled "System and Method for Provisioning Databases in a Hyperconverged Infrastructure System," was duly and legally issued by the United States Patent and Trademark Office from U.S. Patent Application Serial No. 16/234,553, filed on December 27, 2018, attached as **Exhibit 2**.  Nutanix, Inc. is the owner, by valid assignment from inventors Kuchibhotla, Khanuja, Menon, Rawat, and Jeremy Launier of the entire right, title, and interest in and to the '336 Patent, including the right to assert all causes of action arising under the patent and the right to any remedies for infringement of the patent.

**3.     United States Patent No. 11,640,340**

45.     On May 2, 2023, United States Patent No. 11,640,340 ("the '340 Patent"), entitled "System and Method for Backing up Highly Available Source Databases in a Hyperconverged

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY
- 12 -                                    COMPLAINT AND DEMAND
FOR JURY TRIAL

System," was duly and legally issued by the United States Patent and Trademark Office from U.S. Patent Application Serial No. 17/182,511, filed on February 23, 2021, attached as **Exhibit 3**. Nutanix, Inc. is the owner, by valid assignment from inventors Sontakke, Khanuja, and Banthia of the entire right, title, and interest in and to the '340 Patent, including the right to assert all causes of action arising under the patent and the right to any remedies for infringement of the patent.

### 4.   United States Patent No. 11,860,818

46.     On January 2, 2024, United States Patent No. 11,860,818 ("the '818 Patent"), entitled "System and Method for Provisioning Databases in a Hyperconverged Infrastructure System," was duly and legally issued by the United States Patent and Trademark Office from U.S. Patent Application Serial No. 18/113,528, filed on February 23, 2023, attached as **Exhibit 4**. Nutanix, Inc. is the owner, by valid assignment from inventors Kuchibhotla, Khanuja, Jeremy Launier, Menon, and Rawat of the entire right, title, and interest in and to the '818 Patent, including the right to assert all causes of action arising under the patent and the right to any remedies for infringement of the patent.

### E.   Tessell's Willful Patent Infringement.

47.     Upon information and belief, Tessell had actual knowledge of the Asserted Patents when developing, selling, and/or offering for sale the Accused Product.

48.     Kuchibhotla has personal knowledge of the '157, '336, and '818 Patents, and their underlying applications, on which he is a named inventor.  Kuchibhotla's knowledge is imputed to Tessell because he is a co-founder and the CEO of Tessell.

49.     Khanuja has personal knowledge of the '336,'340, and '818 Patents, and their underlying applications, on which he is a named inventor.  Khanuja's knowledge is imputed to Tessell because he is a co-founder, a Vice President, and the Head of Engineering of Tessell.

50.     Banthia has personal knowledge of the '157 and '340 Patents, and their underlying applications, on which he is a named inventor.  Banthia's knowledge is imputed to Tessell because he is a co-founder, Head of Go-to-Market, and Head of Product of Tessell.

51.     Menon has personal knowledge of the'336 and '818 Patents and their underlying applications, on which he is a named inventor.  Menon's knowledge is imputed to Tessell because,

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 13 -

COMPLAINT AND DEMAND
FOR JURY TRIAL

1  on information and belief, he is a Principal Engineer at Tessell.

2      52.    Rawat has personal knowledge of the '366 and '818 Patents and their underlying

3  applications, on which he is a named inventor.  Rawat's knowledge is imputed to Tessell because,

4  on information and belief, he is a Director of Databases at Tessell.

5      53.    Sontakke has personal knowledge of the '340 Patent, and its underlying application,

6  on which he is a named inventor.  Sontakke's knowledge is imputed to Tessell because he is a

7  Director of Engineering at Tessell.

8      54.    Tessell's infringement of the Asserted Patents is willful. Tessell was founded by

9  KKB, who were instrumental in developing the technologies embodied in the Asserted Patents and

10  who assigned their rights in the Asserted Patents to Nutanix. After assigning their patent rights,

11  however, KKB worked in secret, while still being employed and compensated by Nutanix, to

12  develop the Accused Product, knowing full well that the Accused Product would infringe the

13  Asserted Patents.  Other named inventors on the Asserted Patents, including former Nutanix India

14  employees Rowat and Sontakke, who also assigned their patent rights to Nutanix are, on

15  information and belief, employed by Tessell or a Tessell subsidiary as engineers working on the

16  Accused Product.

17      55.    Because at least the founders of Tessell were inventors of the Asserted Patents, they

18  were necessarily aware that the technologies covered by the Asserted Patents were proprietary to

19  Nutanix and that developing new products for Tessell using the inventions of the Asserted Patents

20  would infringe the Asserted Patents.  Nonetheless, in spite of being aware of the Asserted Patents

21  and that its Accused Product infringes the Asserted Patents, Tessell has and continues to make, sell,

22  and offer to sell products that practice the Asserted Patents without authorization.

23      56.    In addition, because Tessell was founded by and, upon information and belief, is

24  managed and controlled by former Nutanix employees who are also inventors of the Asserted

25  Patents and have, on information and belief, been aware of the Asserted Patents and were personally

26  aware of Nutanix's patenting efforts with respect to the Era product during their employment,

27  Tessell's infringement is willful.

28      57.    Finally, at the absolute latest, Tessell has been aware of the Asserted Patents since

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 14 -

COMPLAINT AND DEMAND
FOR JURY TRIAL

the date of service of this Complaint.  Tessell's ongoing infringement is deliberate, willful, and knowing, with conscious disregard of Nutanix's rights, entitling Nutanix to enhanced damages.

**CLAIM I**
**COPYRIGHT INFRINGEMENT**

58.     Nutanix hereby restates and re-alleges the allegations set forth in the paragraphs above and incorporates them by reference.

59.     The source code for Nutanix Era is an original work of authorship owned by Nutanix that constitutes copyrightable subject matter under 17 U.S.C. §§ 101 and 102.

60.     Nutanix has registered copyrights for two versions of its Era source code—ERA version 2.1.1.2 (Registration No. TXu 2-410-887) and Era version 2.5.2.2 (Registration No. TXu 2-410-892)—encompassing all copyrightable subject matter contained therein. Certificates of Registration for the Asserted Works are attached as **Exhibits 5 and 6**.

61.     Without permission or authorization from Nutanix, and in willful violation of its rights under 17 U.S.C. § 106, Tessell unlawfully reproduced, distributed, publicly displayed, and/or created derivative works of the Asserted Works.

62.     Nutanix has suffered irreparable harm due to Tessell's copyright infringement and will continue to suffer irreparable injury unless Tessell and its officers, agents, employees, and all persons acting in concert with them, are enjoined from engaging in any further such acts in violation of 17 U.S.C. § 501 *et seq*.  On information and belief, unless Defendant is enjoined, it will continue intentionally infringing Nutanix's copyrights.

63.     Nutanix has also suffered, and will continue to suffer, monetary loss to its business as a direct and proximate result of Tessell's infringement.

64.     Upon information and belief, Tessell has realized unjust profits, gains, and advantages as a direct and proximate result of its infringement.

65.     Nutanix is entitled to injunctive relief, to recover damages according to proof, to disgorgement of profits from Tessell gained by its infringement, and to its reasonable attorneys' fees and costs in prosecuting this claim.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 15 -

COMPLAINT AND DEMAND
FOR JURY TRIAL

**CLAIM II**
**INFRINGEMENT OF U.S. PATENT NO. 10,817,157**

66.     Nutanix incorporates by reference and re-alleges all the foregoing paragraphs of the Complaint as if fully set forth herein.

67.     Tessell and/or its customers directly infringe one or more claims of the '157 Patent under 35 U.S.C. § 271(a), including at least Claims 1, 9, 10, 15, and 19, either literally or under the doctrine of equivalents by making, using, offering to sell, selling, and/or importing the Accused Product in the United States without permission or license from Nutanix.

68.     On information and belief, at least since it received this Complaint, Tessell also induces infringement of the '157 Patent by its customers in the United States, as discussed above, under 35 U.S.C. § 271(b), both by configuring the Accused Product to operate in a manner that Tessell knows would infringe the claims in the '157 Patent and by encouraging its customers to use the Accused Product in a manner that Tessell knows would infringe the claims in the '157 Patent.

69.     Tessell has also sold or offered to sell the Accused Product in an infringing configuration to its customers, which, on information and belief, have utilized the Accused Product in the United States.

70.     Upon information and belief, Tessell has made and is continuing to make unlawful gains and profits from its infringement of the '157 Patent.

71.     At least since it received this Complaint, Tessell's infringement of the '157 Patent has been and continues to be willful and deliberate.

72.     Tessell will continue to infringe unless enjoined by this Court.  Nutanix faces real, substantial, and irreparable damage and injury of a continuing nature from infringement for which Nutanix has no adequate remedy at law.

73.     As a result of Tessell's infringement, Nutanix has been irreparably harmed, and will continue to be damaged, until Tessell is enjoined from further acts of infringement.

74.     Tessell's infringement has also caused monetary damages to Nutanix in an amount to be determined at trial.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 16 -

COMPLAINT AND DEMAND
FOR JURY TRIAL

**CLAIM III**
**INFRINGEMENT OF U.S. PATENT NO. 11,010,336**

75.     Nutanix incorporates by reference and re-alleges all the foregoing paragraphs of the Complaint as if fully set forth herein.

76.     Tessell and/or its customers directly infringe one or more claims of the '336 Patent under 35 U.S.C. § 271(a), including at least Claims 1, 10, 12, 19, and 23, either literally or under the doctrine of equivalents by making, using, offering to sell, selling, and/or importing the Accused Product in the United States without permission or license from Nutanix.

77.     On information and belief, at least since it received this Complaint, Tessell also induces infringement of the '336 Patent by its customers in the United States, as discussed above, under 35 U.S.C. § 271(b), both by configuring the Accused Product to operate in a manner that Tessell knows would infringe the claims in the '336 Patent and by encouraging its customers to use the Accused Product in a manner that Tessell knows would infringe the claims in the '336 Patent.

78.     Tessell has also sold or offered to sell the Accused Product in an infringing configuration to its customers, which, on information and belief, have utilized the Accused Product in the United States.

79.     Upon information and belief, Tessell has made and is continuing to make unlawful gains and profits from its infringement of the '336 Patent.

80.     At least since it received this Complaint, Tessell's infringement of the '336 Patent has been and continues to be willful and deliberate.

81.     Tessell will continue to infringe unless enjoined by this Court.  Nutanix faces real, substantial, and irreparable damage and injury of a continuing nature from infringement for which Nutanix has no adequate remedy at law.

82.     As a result of Tessell's infringement, Nutanix has been irreparably harmed, and will continue to be damaged, until Tessell is enjoined from further acts of infringement.

83.     Tessell's infringement has also caused monetary damages to Nutanix in an amount to be determined at trial.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 17 -

COMPLAINT AND DEMAND
FOR JURY TRIAL

**CLAIM IV**
**INFRINGEMENT OF U.S. PATENT NO. 11,640,340**

84.     Nutanix incorporates by reference and re-alleges all the foregoing paragraphs of the Complaint as if fully set forth herein.

85.     Tessell and/or its customers directly infringe one or more claims of the '340 Patent under 35 U.S.C. § 271(a), including at least Claims 1, 7, and 13, either literally or under the doctrine of equivalents by making, using, offering to sell, selling, and/or importing the Accused Product in the United States without permission or license from Nutanix.

86.     On information and belief, at least since it received this Complaint, Tessell also induces infringement of the '340 Patent by its customers in the United States, as discussed above, under 35 U.S.C. § 271(b), both by configuring the Accused Product to operate in a manner that Tessell knows would infringe the claims in the '340 Patent and by encouraging its customers to use the Accused Product in a manner that Tessell knows would infringe the claims in the '340 Patent.

87.     Tessell has also sold or offered to sell the Accused Product in an infringing configuration to its customers, which, on information and belief, have utilized the Accused Product in the United States.

88.     Upon information and belief, Tessel has made and is continuing to make unlawful gains and profits from its infringement of the '340 Patent.

89.     At least since it received this Complaint, Tessell's infringement of the '340 Patent has been and continues to be willful and deliberate.

90.     Tessell will continue to infringe unless enjoined by this Court.  Nutanix faces real, substantial, and irreparable damage and injury of a continuing nature from infringement for which Nutanix has no adequate remedy at law.

91.     As a result of Tessell's infringement, Nutanix has been irreparably harmed, and will continue to be damaged, until Tessell is enjoined from further acts of infringement.

92.     Tessell's infringement has also caused monetary damages to Nutanix in an amount to be determined at trial.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 18 -

COMPLAINT AND DEMAND
FOR JURY TRIAL

**CLAIM V**
**INFRINGEMENT OF U.S. PATENT NO. 11,860,818**

93.     Nutanix incorporates by reference and re-alleges all the foregoing paragraphs of the Complaint as if fully set forth herein.

94.     Tessell and/or its customers directly infringe one or more claims of the '818 Patent under 35 U.S.C. § 271(a), including at least Claims 1, 8, and 15, either literally or under the doctrine of equivalents by making, using, offering to sell, selling, and/or importing the Accused Product in the United States without permission or license from Nutanix.

95.     On information and belief, at least since it received this Complaint, Tessell also induces infringement of the '818 Patent by its customers in the United States, as discussed above, under 35 U.S.C. § 271(b), both by configuring the Accused Product to operate in a manner that Tessell knows would infringe the claims in the '818 Patent and by encouraging its customers to use the Accused Product in a manner that Tessell knows would infringe the claims in the '818 Patent.

96.     Tessell has also sold or offered to sell the Accused Product in an infringing configuration to its customers, which, on information and belief, have utilized the Accused Product in the United States.

97.     Upon information and belief, Tessell has made and is continuing to make unlawful gains and profits from its infringement of the '818 Patent.

98.     At least since it received this Complaint, Tessell's infringement of the '818 Patent has been and continues to be willful and deliberate.

99.     Tessell will continue to infringe unless enjoined by this Court.  Nutanix faces real, substantial, and irreparable damage and injury of a continuing nature from infringement for which Nutanix has no adequate remedy at law.

100.    As a result of Tessell's infringement, Nutanix has been irreparably harmed, and will continue to be damaged, until Tessell is enjoined from further acts of infringement.

101.    Tessell's infringement has also caused monetary damages to Nutanix in an amount to be determined at trial.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 19 -

COMPLAINT AND DEMAND
FOR JURY TRIAL

**CLAIM VI**
**TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS**

102.   Tessell's knowing interference with Nutanix's contractual rights commenced the moment it came into existence.  Tessell took all the secretive work KKB did in 2020 and 2021, while they were employees of Nutanix, and made it the foundation of the new company.

103.   KKB all entered into the Agreements with Nutanix whereby they promised to refrain from working for competitors while employed by Nutanix, and also promised to assign to Nutanix all right, title, and interest in all works of authorship and all inventions, as well as all other enforceable intellectual property rights made while employed by Nutanix.

104.   Specifically, Sections 3 and 4 of the Agreements obligated KKB to disclose and assign all inventions, works of authorship, ideas, and any other intellectual property made during their employment at Nutanix.  Section 5 of the Agreements and Nutanix's conflict of interest policy obligated KKB to refrain from working for a competing enterprise while employed by Nutanix.

105.   KKB are co-founders and officers or managers of Tessell, and their knowledge of the Agreements is imputed to Tessell.  Tessell thus has actual knowledge of these contractual provisions.

106.   Knowing that it was disrupting Nutanix's contractual right to loyalty from its employees, Tessell employed Banthia for a nearly two-month period of time while he was still employed by Nutanix.  Tessell employed at least Banthia, and perhaps others, after Tessell's founding on March 24, 2021 through Banthia's termination from Nutanix in May 2020.  The interference charge of this Claim IV includes Banthia's overlapping employment by Tessell while subject to his Agreement with Nutanix, and the Stolen IP includes all of his works of authorship and inventions for Tessell during the period of overlap that fall within the assignment obligation of Banthia's Agreement with Nutanix.

107.   Knowing that it was disrupting Nutanix's express contractual right to ownership of the Stolen IP, Tessell has taken possession of and exercised dominion, control, and ownership over the Stolen IP.  The precise contours of the Stolen IP are unknown to Nutanix at this time, but Nutanix is informed and believes and thereupon asserts that the Accused Product includes one or

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 20 -

COMPLAINT AND DEMAND
FOR JURY TRIAL

more works of authorship, inventions, trade secrets, or other enforceable intellectual property rights that are, in fact, owned by Nutanix.

108.   Nutanix has been harmed by Tessell's interference with the Agreements.  Nutanix was harmed by being unwittingly forced to indirectly fund the development of a competitor; has been prevented from exploiting the Stolen IP to its own advantage; has suffered disadvantage as a result of Tessell's exploitation of the Stolen IP to its detriment, and has otherwise been harmed by the introduction of a competitor to the marketplace who has been unfairly exploiting intellectual property owned by Nutanix.

109.   Tessell's unlawful exercise of dominion over the Stolen IP, thereby interfering with Nutanix's contractual rights, was a substantial factor in causing Nutanix's harm as described herein.

110.   Nutanix faces real, substantial, and irreparable damage and injury of a continuing nature from Tessell's ongoing interference with the Agreements, for which Nutanix has no adequate remedy at law.

111.   As a result of Tessell's unlawful interference with the Agreements, Nutanix has been irreparably harmed, and will continue to be damaged, until Tessell is enjoined from further acts of unlawful dominion and control over the Stolen IP.

112.   Tessell's interference with the Agreements has also caused monetary damages to Nutanix in an amount to be determined at trial.

113.   Tessell's interference with the Agreements has been carried out through fraud, oppression, and/or malice at least by its means of deliberate secrecy, knowing theft and concealment of Nutanix work product, and other fraudulent and oppressive acts described herein, entitling Nutanix to punitive damages.

### CLAIM VII
### DECLARATORY AND INJUNCTIVE RELIEF

114.   Nutanix and Tessell have an actual and substantial controversy regarding ownership of the Stolen IP and the degree to which it is incorporated in the Accused Product.

115.   Nutanix asserts, and upon information and belief, Tessell denies, that Nutanix is entitled under the Agreements to ownership of the Stolen IP as well as all works and inventions

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 21 -

COMPLAINT AND DEMAND
FOR JURY TRIAL

based upon and derived therefrom to which it is entitled under the Agreements and/or by operation of law.

116.     Accordingly, Nutanix and Tessell have adverse legal interests regarding the ownership of all intellectual property encompassed by the Accused Product, and those adverse legal interests are of sufficient immediacy and reality to warrant issuance of a declaratory judgment regarding the ownership of intellectual property encompassed by Tessell's Database Platform and associated services.

117.     Nutanix requests that this Court declare that Nutanix owns all right, title, and interest to the intellectual property and things entitled to it under the Agreements and by operation of law, determine the scope of such intellectual property interests possessed by Tessell, and award them to Nutanix by transfer of dominion, control, and transfer of any other identifiable intellectual property encompassed hereby that remains within Tessell's possession, custody or control.

**PRAYER FOR RELIEF**

WHEREFORE, Nutanix prays for judgment against Defendant as follows:

A.     That the Court issue a judgment that Tessell infringed the Asserted Works pursuant to 17 U.S.C. § 501;

B.     That the Court issue preliminary and permanent injunctive relief enjoining Tessell from reproducing, distributing, publicly displaying, or preparing derivative works of the Asserted Works;

C.     That the Court award Nutanix its actual damages caused by Tessell's infringement of the Asserted Works;

D.     That the Court award Nutanix all gains, profits, and advantages derived from Tessell's infringement of the Asserted Works;

E.     That the Court award Nutanix statutory damages for each of the Asserted Works that Tessell infringed;

F.     That the Court award Nutanix its attorneys' fees and all other costs associated with Tessell's infringement of the Asserted Works;

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 22 -

COMPLAINT AND DEMAND
FOR JURY TRIAL

G.      That this Court declare Tessell has directly infringed, and/or infringed by doctrine of equivalents, and continues to directly infringe and/or infringe by doctrine of equivalents one or more claims of the Asserted Patents under 35 U.S.C. § 271(a);

H.      That this Court declare Tessell has indirectly infringed, and continues to indirectly infringe, one or more claims of the Asserted Patents under 35 U.S.C. § 271(b);

I.      That this Court order an accounting for all monies received by or on behalf of Tessell and all damages sustained by Nutanix because of Tessell's above-mentioned patent infringements, that such monies and damages be awarded to Nutanix, and that interest and costs be assessed against Tessell according to 35 U.S.C. §§ 154(d) and 284;

J.      That this Court declare Tessell's patent infringement was and is willful from the time they became aware of the infringing nature of their product, and award treble damages for the period of the willful infringement of the Asserted Patents;

K.      That this Court declare this an exceptional case and order that Tessell pay Nutanix its reasonable attorneys' fees and costs according to 35 U.S.C. § 285;

L.      That Tessell, its officers, directors, agents, servants, employees, attorneys, affiliates, divisions, branches, parents, and those persons in active concert or participation with any of them, be permanently restrained and enjoined from directly or indirectly infringing the Asserted Patents;

M.      An award of damages pursuant to 35 U.S.C. § 284 sufficient to compensate Nutanix for Tessell's past patent infringement and any continuing or future infringement up until the date that Tessell is finally and permanently enjoined from further infringement, including compensatory damages;

N.      An assessment of pre-judgment and post-judgment interest and costs against Tessell, together with an award of such interest and costs, in accordance with 35 U.S.C. § 284;

O.      That this Court declare Tessell has tortiously interfered with Nutanix's Agreements with Kuchibhotla, Khanuja, and Banthia by exercising dominion over the Stolen IP;

P.      That the Court issue preliminary and permanent injunctive relief enjoining Tessell from exercising dominion over the Stolen IP;

Q.      That the Court restore to Nutanix the Stolen IP;

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 23 -                              COMPLAINT AND DEMAND
FOR JURY TRIAL

1        R.     That the Court award Nutanix its actual damages caused by Tessell's tortious

2 interference with the Agreements;

3        S.     That the Court award Nutanix all gains, profits, and advantages derived from

4 Tessell's tortious interference with the Agreements;

5        T.     That the Court enter an award of punitive damages for Tessell's tortious interference

6 with the Agreements;

7        U.     That the Court declare that Nutanix owns all right, title, and interest to the Stolen IP;

8        V.     That the Court award to Nutanix, by transfer of dominion, control, and transfer of

9 any other identifiable intellectual property, the Stolen IP that remains within Tessell's possession,

10 custody, or control;

11        W.     That Nutanix have such other and further relief as this Court may deem just and

12 proper;

13        X.     An order for an accounting of all gains, profits, cost savings, and advantages realized

14 by Defendant from its acts;

15        Y.     All such further and additional relief, in law or equity, to which Nutanix may be

16 entitled or which the Court deems just and proper.

17

18 **DEMAND FOR JURY TRIAL**

19        Pursuant to Federal Rule of Civil Procedure 38(b), Nutanix hereby demands a jury trial on

20 all issues so triable.

21

22

23

24 Dated: March 20, 2024                ORRICK, HERRINGTON & SUTCLIFFE LLP

25

26                      By:     /s/ Annette L. Hurst

27                            ANNETTE L. HURST
                         Attorneys for Plaintiff NUTANIX, INC.

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 24 -

COMPLAINT AND DEMAND
FOR JURY TRIAL