UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NUTANIX, INC., | Case No. 24-cv-01729-AMO |
| Plaintiff, | |
| v. | **ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION** |
| TESSELL, INC., | Re: Dkt. No. 23 |
| Defendant. | |

Defendant Tessell, Inc.'s ("Tessell") Motion to Compel Arbitration was heard before this Court on December 20, 2024. Having read the papers filed by the parties and carefully considered their arguments therein and those made at the hearing, as well as the relevant legal authority, the Court hereby **GRANTS** Tessell's Motion, for the following reasons.

## I.    BACKGROUND

Plaintiff Nutanix, Inc. ("Nutanix") provides flexible cloud platform infrastructure for business applications. Compl. (ECF 1) ¶ 1. Defendant Tessell is a web-based software-as-a-service ("SaaS") competitor offering a competing cloud-based database software management product. Compl. ¶ 1. Tessell's three founders, Bala Kuchibhotla, Kamaldeep Khanuja, and Bakul Banthia (collectively, "KKB") are all former employees of Nutanix. Compl. ¶ 1. On the same day that Nutanix filed this action against Tessell, it filed a Demand for Arbitration against KKB pursuant to arbitration clauses in their employment agreements. *See* Silbert Decl., Ex. 1 (JAMS Demand for Arbitration ("Demand")).

### A.    Nutanix's Claims in This Action

Nutanix alleges that "Tessell's three founders, [KKB], substantially developed its competing technology while they were still employed by Nutanix," and that they "took all or a

substantial portion of the [Nutanix] Era source code, saved it to private accounts and devices, and Tessell later incorporated Era source code into its product."  Compl. ¶ 1.

Tessell now moves to compel arbitration of Nutanix's Claims I, VI, and VII.  Through Claim I, copyright infringement, Nutanix alleges that Tessell has infringed Nutanix's copyrights on the source code for Nutanix Era versions 2.1.1.2 and 2.5.5.2.  Compl. ¶¶ 59-61.  Nutanix acknowledges that it has had "difficulty" determining where Nutanix's copyrighted code may have been copied in Tessell's code, which it describes as a "black box," but it asserts, on information and belief, that discovery will reveal where copying has occurred.  Compl. ¶¶ 39-40.  In Claim VI, tortious interference with contractual relations, Nutanix avers that Tessell interfered with KKB's employment agreements, and specifically, with their Confidential Information and Invention Assignment Agreements ("CIIAA").  Compl. ¶¶ 25, 102-107 (Nutanix required KKB to sign the CIIAAs as a condition of their employment).  These CIIAAs also form the basis for Nutanix's arbitration demand against KKB, and Nutanix alleges in the arbitration that KKB breached those same agreements.  *See* Demand, Ex. A (ECF 24-1 at 5-7).  Finally, through Claim VII, declaratory and injunctive relief, Nutanix seeks a declaration that, under the CIIAAs, it owns certain intellectual property ("IP") that it alleges KKB developed while employed by Nutanix, instead of after they left Nutanix in 2021.  Compl. ¶ 117.  Claim VII likewise overlaps with the arbitration demand, where Nutanix seeks the same relief based on the same allegations.  *See* Demand, Ex. A.

There are three bodies of intellectual property at issue in this dispute: the copyrights in Nutanix's Era software, Nutanix's patents, and stolen intellectual property – work product that KKB purportedly created while they were employed by Nutanix and related to its line of business, but which KKB did not disclose and assign as they were required to do by the terms of their respective CIIAAs.  Compl. ¶¶ 6-8.  Claims II, III, IV, and V for patent infringement similarly seek recovery based on Nutanix's intellectual property.

### B.    The Arbitration Agreements

Nutanix required KKB to sign employment agreements that contained arbitration provisions governing their employment with and separation from Nutanix.  Compl. ¶¶ 8-9, 25.  *See also* Demand, Ex. E & Ex. F.  One such provision – contained in the CIIAA – included an

1  agreement that "any and all controversies, claims, or disputes with anyone. . . arising out of,

2  relating to, or resulting from my employment with the company or the termination of my

3  employment with the company . . . shall be subject to binding arbitration . . . pursuant to

4  California law," including "any statutory claims under local, state, or federal law . . . and any other

5  statutory or common law claims."  Demand, Ex. E (ECF 24-1 at 309-25, "CIIAA"), § 13.A.  The

6  provision further provides that any arbitration "will be administered by Judicial Arbitration &

7  Mediation Services, Inc. ('JAMS'), pursuant to its Employment Arbitration Rules & Procedures"

8  and that "the arbitrator shall administer and conduct any arbitration in accordance with California

9  law."  *Id.*, § 13.B; *see also id.*, § 14.A.

10      Another provision – contained in the Nutanix Dispute Resolution Agreement ("DRA")

11  attached to the Demand – likewise provides that "all claims, disputes or controversies, past,

12  present, or future . . . arising out of, relating to, or having any connection to your application for

13  employment, your employment with the Company, and/or the cessation of your employment" are

14  to be resolved "exclusively through final and binding arbitration."  *See* Demand, Ex. F (ECF 24-1

15  at 326-30, "DRA").  The DRA, by its terms, "replaces and supersedes any prior agreements to

16  arbitrate," governs "any disputes arising out of or relating to any CIIAA," and "supersedes . . . any

17  contrary language . . . in any CIIAA," though it also provides that the CIIAA will otherwise

18  "remain in full effect" and will operate according to its terms.  DRA at 4.  The DRA further

19  provides, in a section titled "Claims Covered by this Agreement," that "[t]his Agreement is

20  intended to be as broad as legally permissible" and applies "without limitation, to claims based

21  upon or related to: . . . breach of contract; breach of fiduciary duty, trade secrets, unfair

22  competition; . . . and claims arising under any state and federal statutes or regulations applicable to

23  employees or applicable to the employment relationship and the cessation of the employment

24  relationship. . . and state statutes or regulations addressing the same or similar subject matters."

25  *Id.*  In addition, the DRA clarifies that "all disputes concerning the applicability, scope, formation,

26  enforceability, validity, or waiver of this Agreement or any portion of this Agreement, shall be

27  resolved by the Arbitrator."  *Id.*

28

United States District Court
Northern District of California

3

Nutanix does not dispute the validity of these provisions requiring arbitration (collectively, the "Arbitration Agreement"). To the contrary, Nutanix relies on its employment agreements in both its Demand against KKB at JAMS and its Complaint against Tessell in this case. *See, e.g.*, Demand, §§ 5-6; Compl. ¶¶ 8-9, 25, 35, 102-113, 114-117.

### C.    Nutanix's Allegations in Its Parallel Arbitration Demand

As noted above, Nutanix filed this action against Tessell on the same day it filed a Demand for Arbitration against KKB pursuant to the arbitration clauses in their employment agreements. *See* Silbert Decl., Ex. 1 (JAMS Demand for Arbitration ("Demand")). In the Demand, Nutanix presents essentially the same allegations against KKB as Nutanix alleges against Tessell in the Complaint. Nutanix attaches the Complaint as an exhibit to the Demand and asserts that the Complaint describes "related wrongdoing" and provides a "more fulsome description of [KKB's] wrongdoing." *Id.*, Ex. 1 (Ex. A therein).

The Demand asserts claims and seeks relief that directly overlap with Nutanix's claims in this action:

(1) In the Demand, Nutanix alleges that KKB infringed Nutanix's copyrights in Nutanix Era versions 2.1.1.2 and 2.5.2.2 by copying Era source code into Tessell's code. Silbert Decl., Ex. 1 (Ex. A at 2). Tessell contends that this claim in arbitration directly overlaps with Claim I of the Complaint (copyright infringement).

(2) In the Demand, Nutanix accuses KKB of breaching their CIIAAs by allowing Tessell to use technology that they purportedly developed while working at Nutanix. Silbert Decl., Ex. 1 (Ex. A at 1). Tessell contends that this claim overlaps with Claim VI of the Complaint with the only difference being that, in the Demand, Nutanix accuses KKB of breaching their CIIAAs, whereas in the Complaint, Nutanix accuses Tessell of causing KKB to breach their CIIAAs.

(3) Nutanix also asserts in the Demand a claim that KKB misappropriated Nutanix's trade secrets. Silbert Decl., Ex. 1 (Ex. A at 1). Tessell contends that this claim arises from the same nucleus of common allegations – i.e., that KKB allegedly took Nutanix's confidential and proprietary information and used it to create Tessell.

(4) In the Demand, Nutanix seeks as relief a constructive trust over KKB's shares of Tessell on the ground that KKB were purportedly obligated under their CIIAAs to assign Tessell's technology to Nutanix. Silbert Decl., Ex. 1 (Ex. A at 2). Tessell contends this claim directly overlaps with Claim VI (tortious interference with contractual relations) and Claim VII (declaratory and injunctive relief) in the Complaint.

These claims all depend on the underlying allegation that KKB developed Tessell's technology while employed at Nutanix. The only difference is the relief requested. In the

4

Demand, Nutanix seeks a constructive trust over KKB's shares in Tessell, while in the Complaint, Nutanix seeks a declaration that it owns Tessell's technology.

## II.    DISCUSSION

Tessell moves to compel certain of Nutanix's claims arbitration and to stay this case in its entirety. *See* Mot. (ECF 23). In the Motion, Tessell seeks to compel arbitration of Claim I (copyright infringement), Claim VI (tortious interference with contractual relations), and Claim VII (declaratory and injunctive relief). *Id.* at 13-22. Tessell concedes that it cannot compel arbitration of Claims II, III, and IV for patent infringement. *Id.* at 3 n.2.

"The Federal Arbitration Act ('FAA') governs motions to compel arbitration." *Longboy v. Pinnacle Prop. Mgmt. Servs., LLC*, 718 F. Supp. 3d 1004, 1011 (N.D. Cal. 2024) (citing 9 U.S.C. §§ 1, et seq.). A court must consider two "gateway issues." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (citation omitted). First, the court must assess "whether a valid agreement to arbitrate exists." *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 999 (9th Cir. 2021) (citing *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)). Second, the court must assess "whether the agreement encompasses the dispute at issue." *Id.* "If the answer is yes to both questions, the court must enforce the agreement." *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004) (citing *Chiron*, 207 F.3d at 1130).

In determining the existence and validity of an agreement to arbitrate, "a court applies a standard similar to the summary judgment standard of [Federal Rule of Civil Procedure] 56." *Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 804 (N.D. Cal. 2004) (internal quotation marks omitted). If "a district court concludes that there are genuine disputes of material fact as to whether the parties formed an arbitration agreement, the court must proceed without delay to a trial on arbitrability and hold any motion to compel arbitration in abeyance until the factual issues have been resolved." *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 672 (9th Cir. 2021).

### A.    Non-Signatories and Threshold Arbitrability

"[A]rbitration is fundamentally a matter of contract." *Momot v. Mastro*, 652 F.3d 982, 986 (9th Cir. 2011). "[G]ateway issues of arbitrability presumptively are reserved for the court." *Id.* at

987.  Even though judicial resolution, not arbitration, is the presumptive forum for disputes about arbitrability, "parties may agree to delegate them to the arbitrator."  *Id.* at 987; *see also Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) (same).  "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so."  *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

Controlling Ninth Circuit authority provides that the court, not the arbitrator, decides questions of arbitrability involving judicial doctrines and non-signatories.  *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1127 (9th Cir. 2013) ("Given the absence of clear and unmistakable evidence that Plaintiffs agreed to arbitrate arbitrability with nonsignatories, the district court had the authority to decide whether the instant dispute is arbitrable.").  As another court in this District recognized, "a delegation provision can be invoked only if the parties to the dispute agreed that their disagreement about arbitrability would be decided by the arbitrator."  *Young v. ByteDance Inc.*, 700 F. Supp. 3d 808, 812 (N.D. Cal. 2023) (Chhabria, J.) (finding that the court decides threshold arbitrability where a nonsignatory defendant seeks to enforce an arbitration provision).

Here, Tessell aims to enforce the arbitration provisions as a nonsignatory.  The parties do not dispute that Tessell is not a party to either the CIIAA nor the DRA.  Hurst Decl., Ex. 3 (CIIAA), Ex. 4 (DRA).  In the absence of any agreement between these parties, there can be no claim that they assented to delegate the threshold issue of arbitrability to an arbitrator.  Although both the CIIAA and the DRA include delegation provisions, it is far from obvious that the parties to the instant dispute "agreed that their disagreement about arbitrability would be decided by the arbitrator."  *ByteDance*, 700 F. Supp. 3d at 812.  There is not clear and unmistakable evidence that Nutanix agreed to arbitrate arbitrability with nonsignatory Tessell, and the Court therefore has the authority to decide whether this dispute is arbitrable.

### B.    Basis to Compel Arbitration – Equitable Estoppel

"Generally, the contractual right to compel arbitration may not be invoked by one who is not a party to the agreement and does not otherwise possess the right to compel arbitration."  *Kramer*, 705 F.3d at 1126 (citation and internal quotation marks omitted).  But "[t]he United States Supreme Court has held that a litigant who is not a party to an arbitration agreement may

United States District Court
Northern District of California

1   invoke arbitration under the FAA if the relevant state contract law allows the litigant to enforce the

2   agreement." *Id.* at 1128 (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009)).

3   Accordingly, the Court applies California contract law regarding enforcement of an agreement by

4   a nonsignatory. *See* CIIAA at 10 ("This Agreement will be governed by the laws of the State of

5   California.").

6        "Under California law, '[g]eneral contract and agency principles apply in determining the

7   enforcement of an arbitration agreement by or against nonsignatories.' " *Levi Strauss & Co. v.*

8   *Aqua Dynamics Sys., Inc.*, No. 15-cv-04718-WHO, 2016 WL 6082415, at \*5 (N.D. Cal. 2016)

9   (quoting *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1045 (9th Cir. 2009)). "Among these

10   principles are '1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego;

11   and 5) estoppel.' " *Mundi*, 555 F.3d at 1045 (quoting *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101

12   (9th Cir. 2006)). Tessell argues that the claims advanced by Nutanix are arbitrable under the latter

13   two options in the alternative: either the alter-ego theory or the equitable theory of estoppel. The

14   Court here considers only equitable estoppel as a basis to compel the claims to arbitration.

15        The Ninth Circuit recognizes that California law "allows a nonsignatory to invoke

16   arbitration under the doctrine of equitable estoppel even when a signatory 'attempts to avoid

17   arbitration by suing nonsignatory defendants for claims that are based on the same facts and are

18   inherently inseparable from arbitrable claims against signatory defendants.' " *Franklin v. Cmty.*

19   *Reg'l Med. Ctr.*, 998 F.3d 867, 870-71 (9th Cir. 2021) (quoting *Metalclad Corp. v. Ventana Env't*

20   *Organizational P'ship*, 109 Cal. App. 4th 1705 (2003)). "Where a nonsignatory seeks to enforce

21   an arbitration clause, the doctrine of equitable estoppel applies in two circumstances: (1) when a

22   signatory must rely on the terms of the written agreement in asserting its claims against the

23   nonsignatory or the claims are intimately founded in and intertwined with the underlying contract

24   and (2) when the signatory alleges substantially interdependent and concerted misconduct by the

25   nonsignatory and another signatory and the allegations of interdependent misconduct [are]

26   founded in or intimately connected with the obligations of the underlying agreement." *Kramer*,

27   705 F.3d at 1128-29 (internal quotation marks and citations omitted). Tessell avers that both

28   circumstances apply here.

7

**1.    Claims "intimately founded in and intertwined with" Contracts with KKB**

The claims at issue in the Complaint are so "intimately founded in and intertwined with" Nutanix's employment contracts with KKB that they repeatedly and directly refer to KKB's former employment and the contracts. *See, e.g.*, Compl. ¶¶ 1, 8, 25-26, 35, 31. The three Nutanix claims that Tessell aims to compel to arbitration appear to be entirely premised upon KKB's Nutanix employment agreements. Beyond their substance, these claims are expressly connected to KKB's alleged breach of their employment agreements, which Nutanix simultaneously seeks to enforce in arbitration. Compl. ¶ 9 (alleging "Tessell's part in this ongoing theft"); *see also Herrera v. Cathay Pacific Airways Ltd.*, 94 F.4th 1083, 1089 (9th Cir. 2024) (enforcing arbitration provision where allegations against the nonsignatory are "'intimately founded in and intertwined with' [signatory's] alleged conduct under" the agreement). Indeed, the Demand states that "Nutanix's complaint against Tessell," which it attaches, "provides a more fulsome description of [KKB's] wrongdoing." Demand (ECF 24-1 at 6). In other words, Nutanix concedes that its allegations in this lawsuit and the related arbitration are one and the same.

**a.    Claim I: Copyright Infringement**

Nutanix's copyright allegations against KKB in the Demand are "not incidental to – but a central allegation of" the Complaint against Tessell. *Herrera*, 104 F. 4th at 710. Nutanix argues that the copyright infringement claim should not be arbitrated because the work-made-for-hire doctrine renders Nutanix the author and owner of the subject source code. *See* Opp. at 14 (citing 17 U.S.C. § 101 (definition of "work-made-for-hire") and § 201(b) (ownership)). The work-made-for-hire doctrine on which Nutanix relies requires an employment relationship, and the statutory work-made-for-hire provision Nutanix cites expressly depends on the terms of the contracting parties' "written instrument." 17 U.S.C. § 201(b). In this case, Nutanix's agreements with KKB govern the relevant employment relationships. *See, e.g.*, CIIAA at 1 ("As a condition of my employment with Nutanix . . ."); Compl. ¶¶ 8, 25. In other words, Nutanix's copyright claim against Tessell cannot be evaluated without reference to the KKB-Nutanix agreements and is accordingly arbitrable pursuant to those agreements. *See In re BAM Trading Services Inc. Securities Litig.*, 2024 WL 2520432 at *15 (N.D. Cal. 2024) (compelling arbitration of statutory

claims against nonsignatory where "Plaintiff's claim is not viable without reference to and consideration of the Terms of Use").

Review of the allegations in the Complaint brings this further into relief.  For example, to lay the foundation of Nutanix's claim for copyright infringement, Nutanix alleges that because "KKB's contributions to the Era source code were made in the scope of their employment for Nutanix," that "Nutanix is the author and owner of all copyrightable works of authorship constituting Era made by KKB."  Compl. ¶ 24.  That allegation plainly relies on KKB's employment agreements.  *See* CIIAA; 17 U.S.C. § 101.  Nutanix's other allegations supporting this claim are similarly founded in KKB's conduct pursuant to – or in alleged breach of – their employment agreements.  For example, Nutanix alleges that in the performance of "KKB's daily job responsibilities . . . KKB included Nutanix copyright notices in the Era source code, indicating that they understood Nutanix owned the copyright in Era."  Compl. ¶ 23.  Nutanix alleges that "KKB, and therefore Tessell, were well aware that Nutanix owned copyrights in its source code."  *Id.* ¶ 10.  Nutanix then alleges that "KKB, during their Nutanix employment, used Nutanix's Era source code," Compl. ¶ 38, that KKB "copied the source code to additional personal devices," *id.* ¶ 37, that they did so "to design, build, and demonstrate" the Tessell service, *id.* ¶ 38, and that "Tessell continued to infringe the Era source code after KKB's Nutanix employment," *id.*  These allegations (including Tessell's purported role in them) are factually indistinguishable from Nutanix's copyright claim against KKB in the parallel employment arbitration.  *See* Demand (ECF 24-1 at 6) (alleging that KKB "had access to Nutanix's copyrighted computer programs for the Era product . . . in the scope of their employment," that KKB "infringed Nutanix's copyright," and that they "did this both while they worked at Nutanix and after they quit, bringing Nutanix's computer programs to Tessell for its use as well").  The factual and legal underpinnings of the copyright claim in the litigation are inseparable from those in the arbitration.  *See id.* ("Nutanix's complaint against Tessell, attached as Exhibit B, provides a more fulsome description of Respondents' wrongdoing.").  The copyright claim is intimately tied to the employment agreements and thus must be compelled to arbitration.

1

**b.    Claim VI: Tortious Interference with Contractual Relations**

Nutanix's claim alleging tortious interference with contractual relations likewise depends on KKB's employment agreements and their conduct thereunder.  For example, Nutanix alleges that "KKB were obligated by express written agreements to assign to Nutanix all intellectual property rights in work product created while employed by Nutanix" and that "while still employed by Nutanix, KKB created work product that they did not disclose and assign to Nutanix, but instead traded to Tessell in exchange for their shares in the company."  Compl. ¶ 8; *see also id.* ¶¶ 103-104.  Nutanix further alleges "Tessell's part in this ongoing theft," and claims that "Tessell's acceptance of, claim of ownership and dominion over, and exploitation of the Stolen IP is an interference with Nutanix's exclusive right to title in the Stolen IP."  Compl. ¶ 9; *see also id.* ¶ 105 ("KKB are co-founders and officers or manages of Tessell, and their knowledge of the Agreements is imputed to Tessell.  Tessell thus has actual knowledge of these contractual provisions."); ¶ 107 ("Knowing that it was disrupting Nutanix's express contractual right to ownership of the Stolen IP, Tessell has taken possession of and exercised dominion, control, and ownership over the Stolen IP.").  Nutanix further alleges that its tortious interference charge "includes Banthia's overlapping employment by Tessell while subject to his Agreement with Nutanix, and the Stolen IP includes all of his works of authorship and inventions for Tessell during the period of overlap that fall within the assignment obligation of Bantha's Agreement with Nutanix."  Compl. ¶ 106.  As these allegations reflect, Nutanix's tortious interference with contract claim against Tessell fundamentally relies on KKB's Nutanix contracts.  And Nutanix's breach of contract claims in its arbitration against KKB stem from the exact same allegations.  *See* Demand (ECF 24-1 at 5) (alleging that KKB's CIIAAs "obligate[] employees to disclose and transfer ownership of ideas, inventions, expression, and other works created during their employment to Nutanix," and that KKB breached those agreements by "taking, transferring, using, disclosing, and/or retaining Nutanix Confidential Information following their Nutanix employment," "using Nutanix resources . . . during their employment with Nutanix to form a competitive company," and "developing work product while employed by Nutanix . . . that they then concealed from Nutanix and assigned to Tessell in exchange for their shares in that

1    company"). This claim is so intimately tied to the employment agreements it too must be

2    compelled to arbitration.

3                      **c.        Claim VII: Declaratory & Injunctive Relief**

4            Nutanix's claim seeking declaratory and injunctive relief similarly depends on the rights

5    and obligations of Nutanix and KKB under their Nutanix employment agreements. In particular,

6    Nutanix requests declaratory judgment that "Nutanix is entitled under the Agreements to

7    ownership of the Stolen IP as well as all works and inventions based upon and derived therefrom

8    to which it is entitled under the Agreements." Compl. ¶ 115. These allegations confirm Nutanix's

9    reliance on the terms of KKB's employment agreements as the basis for its employment

10   agreement claims against Tessell. Indeed, the alleged rights Nutanix seeks to vindicate through

11   these claims would not exist but for KKB's employment agreements. Accordingly, it must also be

12   compelled to arbitration.

13                     **d.        Conclusion: Claims "intimately founded in and intertwined
                                    with" Contracts with KKB**
14

15           Nutanix cannot "seek to hold [Tessell] liable pursuant to duties imposed by the agreement,

16   which contains an arbitration provision," but "deny arbitration's applicability." *Murphy*, 724 F.3d

17   at 1229. That is especially true where, as here, Nutanix's claims against Tessell and against KKB

18   are "based on the same facts and are inherently inseparable." *Coinmint, LLC v. DX Corr Design,*

19   *Inc.*, No. 23-CV-00599-RS, 2023 WL 9595893, at *3 (N.D. Cal. Apr. 24, 2023) (finding equitable

20   estoppel appropriate under first prong). "Considering all the facts and the context underlying the

21   case, the nexus between the [Nutanix employment agreements] and Plaintiff's claims against

22   [Tessell], as well as the integral relationship between [Tessell] and [KKB], find in favor of the

23   application of equitable estoppel." *Id.*

24           In sum, the first equitable estoppel circumstance applies to Claims I, VI, and VII – the

25   claims Nutanix advances in this lawsuit are "intimately founded in and intertwined with" the

26   underlying employment agreements. Nutanix's claims against Tessell and against KKB are

27   "based on the same facts and are inherently inseparable." *Metalclad*, 109 Cal. App. 4th at 1718.

28   The Court therefore compels arbitration under the doctrine of equitable estoppel on this basis. In a

United States District Court
Northern District of California

11

belt-and-suspenders approach, the Court proceeds to analyze below whether the second circumstance for a non-signatory's enforcement of an arbitration provision requires application of equitable estoppel here.

### 2. Allegations of "substantially interdependent and concerted misconduct" by Tessell and KKB

Tessell additionally argues that Nutanix's three claims also present a circumstance in which "the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory [Tessell] and another signatory [KKB] and the allegations of interdependent misconduct [are] founded in or intimately connected with the obligations of the underlying agreement." *Kramer*, 705 F.3d at 1129 (citation omitted). Tessell analogizes the facts here to those in *Cap Diagnostics, LLC v. Emeritus Medical Technology LLC*, 2023 WL 8351561 (C.D. Cal. 2023), another case considering the application of equitable estoppel to a nonsignatory's effort to compel arbitration. As in this case, *Cap Diagnostics* concerned an employment dispute between a company and its former employee, who left the company to start an alleged competitor. In particular, the plaintiff, Pathnostics, alleged that the former employee, Embree, founded the defendant, Emeritus, "using Pathnostics's trade secrets, confidential information, protected intellectual property, and other sensitive business information that he and other former employees of Pathnostics took with them to Emeritus." *Compare id.* at *1 *with* Compl. ¶ 1 ("KKB used Nutanix facilities, equipment, services, and even the Nutanix Era source code when developing the Tessell product."), ¶ 4 ("They used Nutanix proprietary technology and intellectual property to which they were privy to design the Accused Product . . . When leaving Nutanix, at least one of them made and retained a copy of all or a substantial portion of the Era source code."), ¶ 5 ("KKB provided to Tessell all of the work they had done while at Nutanix and that they in fact owed to Nutanix, rather than Tessell."), ¶ 32 ("KKB actively planned and worked to compete against Nutanix while they had access to Nutanix's confidential information, including Era source code."). Also like the allegations at issue here, *Cap Diagnostics* involved agreements between a plaintiff company and its former employee, which contained arbitration provisions that are nearly identical to those in the Nutanix employment agreements. 2023 WL 8351561 at *4-5; *see also* CIIAA,

Section 13; DRA at 1-2. Even though Emeritus was not a signatory to those agreements, the court nevertheless compelled arbitration of the claims against Emeritus under equitable estoppel on the basis that the allegations against it were "inexplicably bound up with the agreements Embree executed." *Cap Diagnostics*, 2023 WL 8351561 at *10. In reaching this decision, the court in *Cap Diagnostics* focused on a series of allegations by the plaintiff that echo those made by Nutanix in the Complaint in this case.

There can be no doubt that the allegations against Tessell are inextricably bound up with the agreements KKB executed. For example, Nutanix's copyright claims against Tessell are entirely derivative of the copyright claims against KKB in the arbitration. *Compare* Compl. ¶ 10 *with* Demand at 6. Nutanix's entire Complaint against Tessell would be unintelligible without its interdependent allegations of KKB's conduct. The crux of the Complaint is that KKB "provided to Tessell all of the work they had done while at Nutanix and that they in fact owed to Nutanix, rather than Tessell" and that accordingly "Tessell would not exist but for its theft of Nutanix code and intellectual property." Compl. ¶ 5; *see also* Demand at 6 ("Respondents also took with them Nutanix trade secrets after they departed and used them for the benefit of Tessell."); *id.* (accusing KKB of "bringing Nutanix's computer programs to Tessell for its use"). Indeed, the very first paragraph of the complaint alleges an "unfair and unlawful scheme by [Tessell] and its founders to steal from Nutanix." Compl. ¶ 1. That claim "amount[s] to far more than allegations of parallel misconduct resulting in discrete injuries to [Nutanix]; instead, Plaintiff alleges a single scheme to achieve a single aim." *Coinmint*, 2023 WL 9595893 at *4 (compelling arbitration under equitable estoppel in case involving allegations of interdependent and concerted conduct by signatory and nonsignatory). Moreover, the allegations in the Complaint are intimately connected with the Nutanix employment agreements for all of the reasons already articulated above. As a result, Nutanix's "complaints against [Tessell] are grossly intertwined in the circumstances relating to the underlying subject of the arbitration" against KKB. *Id.*; *compare* Compl. ¶ 1 *with* Demand at 5 (referencing this litigation for Tessell's "related wrongdoing").

Nutanix additionally seeks to fend off equitable arbitration arguing that the claims there are governed by the DRA, as opposed to those here which are controlled by the CIIAA. *See* Sur-

1    Reply (ECF 48) at 3-5.  It contends that the Arbitrator's decision that the arbitration is governed

2    by the terms of the DRA, and not the CIIAA, Hurst Decl., Ex. 6 (ECF 46-1), bolsters its position.

3    Not so.  The arbitrator's decision does not stand for the complete separation of the CIIAA and

4    DRA.  Nor could it, where the DRA explicitly states that it "amends" the CIIAA and "replaces" its

5    arbitration provisions, and that "any disputes arising out of or related to" the CIIAA shall be

6    arbitrated according to the DRA's terms.  *See* Demand, Ex. F (ECF 24-1 at 326-30).  Instead of

7    completely separating the CIIAA and DRA as Nutanix suggests, the arbitrator's decision centers

8    on the statutory basis for the arbitration and whether the Federal Arbitration Act or the California

9    Arbitration Act applies to resolve the scope of third-party discovery available in the arbitration.

10   Hurst Decl., Ex. 6 at 3-4.  The arbitrator did not find that the parties' obligations arise solely under

11   the DRA, and the arbitrator's order does not alter this Court's assessment regarding the

12   interconnectedness of Nutanix's claims and its employment agreements (both of which require

13   arbitration).

14           The allegations of an intertwined course of conduct by Tessell and KKB support the

15   conclusion that Nutanix "should be estopped from denying an obligation to arbitrate a similar

16   dispute with the adversary which is not a party to the arbitration agreement," here, Tessell.  *In re*

17   *Apple & AT & TM Antitrust Litig.*, 826 F. Supp. 2d 1168, 1177 (N.D. Cal. 2011) (granting motion

18   to compel arbitration based on equitable estoppel and in light of the close relationship between the

19   entities involved).  The Court accordingly finds that the claims and allegations involved support

20   the application of equitable estoppel to compel the non-patent claims against Tessell to arbitration.

21                          **3.    Nutanix's Equitable Opposition**

22           Nutanix resists the application of equitable estoppel on the basis that Tessell may not seek

23   equitable relief where it fails to behave equitably.  *See* Opp. at 10-11.  Nutanix claims that

24   Tessell's refusal to pay its fair share for the costs of arbitration demonstrates unfairness that

25   should preclude application of equitable estoppel.  *Id.* at 10-11.  Nutanix's authority in support of

26   this premise is unhelpful.  Nutanix cites, for example, a case in which the California Court of

27   Appeal held that a party's refusal to pay their pro rata share of fees constituted waiver of the

28   arbitration agreement.  Opp. at 11 (citing *Cinel v. Barna*, 206 Cal. App. 4th 1383, 1390 (2012)).

United States District Court
Northern District of California

1    But in *Cinel*, the arbitration agreement expressly provided that the arbitration expenses "shall be

2    borne equally by the parties." *Id.*, 206 Cal. App. 4th at 1387 n.5. Here, the underlying arbitration

3    agreement does not require the signatories to bear the costs of arbitration equally; rather, it

4    requires Nutanix to bear the entire cost of arbitration. *See* DRA at 3-4 (ECF 24-1 at 329-30)

5    (requiring Nutanix to pay "all costs and expenses unique to arbitration, including without

6    limitation the arbitrator's fees"); CIIAA at 13(B) (ECF 24-1 at 318) (requiring Nutanix to "pay for

7    any administrative or hearing fees charged by the Arbitrator or JAMS"). Accordingly, there is no

8    arbitral obligation that KKB, much less Tessell, has repudiated so as to waive the right to arbitrate.

9        Similarly, Nutanix cites to *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th

10   83, 110 (2000), another case unhelpful to its argument. That case did not involve nonsignatories

11   to an arbitration agreement, nor did it consider whether equitable estoppel turns on cost issues.

12   The California Supreme Court instead held that "when an employer imposes mandatory arbitration

13   as a condition of employment, the arbitration agreement or arbitration process cannot generally

14   require the employee to bear any type of expense that the employee would not be required to bear

15   if he or she were free to bring the action in court." *Id.* at 110. The court proceeded to note that

16   such rule "places the cost of arbitration on the party that imposes it." *Id.* at 111. The same

17   reasoning applies here, and it functions counter to Nutanix's argument – it is Nutanix, as the entity

18   that imposed the arbitration provisions on its employees in the first instance, that is bound to pay

19   the cost of arbitration. In sum, Nutanix fails to persuade that Tessell's refusal to pay for

20   arbitration precludes application of equitable estoppel.

21   **III.    CONCLUSION**

22       For the foregoing reasons, the Court **GRANTS** Tessell's Motion. The Court **COMPELS**

23   Nutanix's Claim I (copyright infringement), Claim VI (tortious interference with contractual

24   relations), and Claim VII (declaratory and injunctive relief) to arbitration and **STAYS** the

25   remaining claims. *See* 9 U.S.C. § 3; *see also Lovig v. Best Buy Stores LP*, No. 18-CV-02807-PJH,

26   2019 WL 2568851, at *3 (N.D. Cal. June 21, 2019) (explaining "that if 'any issue' is referred to

27   arbitration, the court 'shall' stay the 'action' pending arbitration").

28

United States District Court
Northern District of California

1     In light of the arbitration stay, the Court **TERMINATES** the parties' pending discovery

2    briefs.  ECF 61; ECF 62.

3

4         **IT IS SO ORDERED.**

5    Dated: March 12 2025

6

7    _____

8    **ARACELI MARTÍNEZ-OLGUÍN**
     **United States District Judge**

9

United States District Court
Northern District of California

16